UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**DECISION AND ORDER**
08-CR-006S

KETSANA PHALOM,

                        Defendant.

## I. INTRODUCTION

Ketsana Phalom is charged in a three-count indictment with importing a mixture of MDMA, commonly referred to as ecstasy, and the related MDA into the United States from Canada in violation of 21 U.S.C. §§ 952(a) and 960(a)(1). He is also charged with failing to declare and unload imported merchandise at the border in violation of 18 U.S.C. § 545, and failing to appear before this Court on October 26, 2004 in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(1)(A)(i).

Currently before this Court is Defendant's motion to dismiss the indictment. Phalom argues that a delay – from the time he failed to appear at a hearing before this Court in 2004 to his extradition from Canada in 2012 – violated his speedy trial rights under the Sixth Amendment of the United States Constitution.

## II. BACKGROUND

The following facts are not in dispute: On February 21, 2003, Defendant Phalom attempted to enter the United States from Canada by crossing over the Lewiston Bridge and, after being stopped and questioned, was arrested on suspicion of transporting ecstasy tablets. (Gov.'s' Br.; Docket No. 38).

Shortly thereafter, Defendant appeared in front of the Hon. Magistrate Judge Hugh B. Scott on February 24, 2003 for an initial appearance on the Complaint. (Id.) He was detained, but after a bail review hearing on February 27, 2003, he was released on bail. (Id.) He then appeared in court for several proceedings in 2003 and early 2004 but failed to appear in front of this Court for a scheduled plea hearing on October 26, 2004. (Id.) Bail was revoked and an arrest warrant based on this failure to appear was issued November 2, 2004. (Def.'s Omnibus Motion; Docket No. 24).

On January 16, 2008, roughly three and a half years after he was arrested, Defendant was indicted on the three charges above. (See Docket No. 1.) An arrest warrant on the indictment was issued that day. Beginning on May 14, 2009, at this Court's direction, the Government filed a series of due diligence reports informing this Court of its efforts to locate and apprehend Defendant. Each time, this Court found the Government's due diligence to be satisfactory. Defendant was finally extradited on October 24, 2012 and appeared before the Honorable Hugh B. Scott to be arraigned.

On January 21, 2013, Defendant filed an omnibus motion that sought, *inter alia*, to dismiss the indictment on the basis that his Sixth Amendment right to a speedy trial had been violated. Judge Scott issued a Report and Recommendation on March 27, 2013, denying Defendant's motion to dismiss on speedy trial grounds. (Report and Recommendation, at 6–7; Docket No. 32). This Court reviewed, *de novo*, the Report and Recommendation on June 3, 2013 and issued a Bench Statement finding the speedy trial right attached at Phalom's arrest – not the time of indictment, as Judge Scott had found. (See Minute Entry for 6/3/13.) The Bench Statement further directed the parties to submit briefs articulating their respective positions on dismissal under Barker v. Wingo.

2

## III.     DISCUSSION

### A.     Barker v. Wingo & the Sixth Amendment's Guarantee of a "Speedy Trial"

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." In Barker v. Wingo the Supreme Court, for the first time, attempted to set out the criteria by which that right is to be judged. 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L.Ed. 2d 101.

The Court began by noting that the right to a speedy trial is different from other rights enshrined in the Constitution because it embodies a societal interest in securing a defendant for trial; this interest exists separately, and sometimes in opposition, to the interest of the accused. Id. at 519–22. It is also different, according to the Barker Court, because it is "necessarily relative" and "impossible to determine with precision when the right has been denied." Id. at 521. Ultimately then, courts must engage in a balancing test that considers cases on an *ad hoc* basis. Id. at 522, 530.

The Court went on to outline four factors that courts should assess when conducting this analysis: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id. at 530. These factors must be considered together, as none alone has the "talismanic" quality sufficient to find deprivation of the right of speedy trial. Id. at 533. The balancing process, to which this Court will now turn, is difficult and sensitive, but must be carried out with "full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." Id.

#### 1.     Length of Delay

This Court already concluded that Defendant's Sixth Amendment right to a speedy trial attached when Defendant was arrested on February 21, 2003. See, e.g., United States

v. Gouveia, 467 U.S. 180, 190, 104 S. Ct. 2292, 2298, 81 L. Ed. 2d 146 (1984) ("Sixth Amendment right may attach before an indictment and as early as the time of arrest and holding to answer a criminal charge . . . .") (internal citations and quotation marks omitted). Defendant was then released on bail on February 27, 2003. Between that date and October 26, 2004, when Defendant failed to appear at a scheduled hearing, he and the Government were diligently involved in negotiating a plea agreement. As Defendant concedes, this time should not be considered in the length-of-delay analysis.

The time between May 14, 2009, when the first due diligence report was filed by the Government, and October 24, 2012, when Defendant was extradited, is also not considered in the analysis because this Court has already found that the Government was acting with due diligence in its attempts to apprehend Defendant during this time. (See, e.g., Minute Entry for 1/6/12; Docket No. 19.)

But regardless of whether this Court measures the time frame from his missed appearance until indictment (38 months) or to the first due diligence report (54 months), the time is, as the Government concedes, presumptively prejudicial and triggers further analysis of the three Barker factors. See Doggett v. United States, 505 U.S. 647, 652, 112. S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (delays approaching 12 months are presumptively prejudicial); Flowers v. Warden, Conn. Corr. Inst., 853 F.2d 131, 133 (2d Cir. 1988) (delay of 17 months is presumptively prejudicial); United States v. Cheng, No. 05-CR-71A(KHS), 2013 U.S. Dist. LEXIS 57417, at *8 (W.D.N.Y., Jan. 9, 2013), *adopted by* 2013 U.S. Dist. LEXIS 56642 (W.D.N.Y. Apr. 19, 2013).

Still, while presumptively prejudicial and certainly troubling, the delay here remains within a time period where the Second Circuit has found no violation. See Flowers, 853

F.2d at 133 (collecting cases with delays ranging from 24 months to 6 years where no speedy trial violation was found). But see Cheng, 2013 U.S. Dist. LEXIS 57417 at *26 (nearly seven-year delay between defendant's flight and Government's first action to extradite the defendant violated his speedy trial right).

### 2. Reasons for the Delay

Closely related to length of delay are the reasons given by the Government to justify the delay. Barker, 407 U.S. at 531. This Court weighs these reasons alongside Defendant's conduct, and gives different justifications differing weights. Id. at 530-31. Prosecutorial negligence is weighed less heavily than a deliberate attempt to delay the trial in order to hamper the defense; but it is nevertheless weighed against the government because it has the ultimate responsibility for bringing the defendant to trial. Id. at 531.

Here, however, the government offers *no* reasons for its inaction between October 26, 2004 and the filing of the indictment on January 16, 2008. This Court has given the Government several opportunities to make such an explanation, but still none has been provided. This Court must, therefore, conclude that the Government was negligent in its efforts to secure Defendant for trial. Although Defendant maintains that the Government's failure to explain the delay before the first due diligence report amounts to bad faith, this Court finds this argument unavailing. Bad faith occurs when the Government deliberately attempts to hamper the defense. See Rayborn v. Scully, 858 F.2d 84, 91 (2d Cir. 1988); Cheng, 2013 U.S. Dist. LEXIS 57417 at *19. But there is no evidence to support an inference of this nature, and, absent this, the delay amounts to negligence.

More concerning, the Government asserts it knew where Defendant was living during the period of the delay, and, additionally, that Defendant traveled in and out of

5

Canada on several occasions. With this knowledge, the Government, at the very least, could seemingly have acted earlier to extradite and bring Phalom in for trial. Indeed, the Government has an affirmative constitutional duty to "make a diligent good faith effort" to promptly bring a defendant to trial. Smith v. Hooey, 393 U.S. 374, 383, 89 S. Ct. 575, 21 L.Ed. 2d 607 (1969). This duty includes an obligation to "exercise due diligence in attempting to locate and apprehend the accused, *even if he is a fugitive who is fleeing prosecution*." Rayborn, 858 F.2d at 90 (emphasis added).

The failure to exercise due diligence in apprehending Defendant Phalom during this time weighs against the government. See Doggett, 505 U.S. at 653.

But Defendant's failure to appear is evidence of his lack of interest in his case, and this, in turn, weighs against him. See Cheng, 2013 U.S. Dist. LEXIS 57417 at *21; Rayborn, 858 F.2d at 90. "While it is true that a defendant is not under any obligation to take affirmative steps to ensure that he will be tried in a timely fashion, a court need not ignore a defendant's fugitivity in considering whether there has been a violation of his sixth amendment right to a speedy trial." Rayburn, 858 F.3d at 90 (internal citation omitted). Absent any explanation – and none has been provided to this Court by affidavit or otherwise – concerning Defendant's abrupt departure after attending all pre-trial appearances, Defendant's flight to Canada is perceived as an attempt to evade prosecution.

### 3. Defendant's Assertion of the Right

The efforts a defendant makes to assert the speedy trial right are closely related to the other factors in the test. Barker, 407 U.S. at 532. If a defendant is seriously being deprived of his right, he is more likely to vigorously assert it, and such an assertion is given

6

strong evidentiary weight. Id. But the inverse it also true: failure to assert the right in a timely manner will be weighed against the defendant. See id.; see also Rayborn, 858 F.2d at 93. The Supreme Court makes clear that this inquiry is sensitive and complex, and must take into account how and when a defendant knew of the charges against him, if a defendant has obtained counsel, and if a delay benefits the defendant and thus dissuades him from invoking his right. Barker, 407 U.S. at 528-29. Last, it must be kept in mind that Defendant Phalom is asserting a right enshrined in the Constitution.

Here, Defendant invoked his right after having been appointed counsel, having full knowledge of the charges against him, and after years of being a fugitive. His fugitive status alone is evidence of his lack of interest in a speedy prosecution of this case, and his assertion of the right for the first time in an omnibus motion when a trial is approaching weighs against him. See Rayborn, 858 F.2d at 92. The Second Circuit has characterized such assertions as "opportunistic," and has accorded them little weight. See United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008). In United States v. McGrath, for example, the appellate court pointed out that "[r]ather than 'repeatedly and energetically' asserting their rights . . . appellants waited until immediately before trial to file their motion to dismiss on speedy trial grounds." 622 F.2d 36, 41 (1980). It therefore weighed this factor in the Government's favor. So will this Court.

### 4. Prejudice to Defendant

Prejudice to the defendant is assessed in the light of the interests the speedy trial right was designed to protect. Barker, 407 U.S. at 532. The Supreme Court identified three such interests: to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and limit the possibility that the defense will be impaired. Id. The

most serious of these interests is the last, because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. Additionally, even if the accused is not incarcerated prior to trial, it is likely he is prejudiced by the anxiety of having a cloud of suspicion over his head. Id. Despite these considerations, however, courts are generally reluctant to find a speedy trial right violation in the absence of specific prejudice. See Abad, 514 F.3d at 275; Rayborn, 858 F.2d at 94; McGrath, 622 F.2d at 41. Indeed, the Second Circuit has recently affirmed that it has "generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation." United States v. Cain, 671 F.3d 271, 297 (2d Cir. 2012); see United States v. New Buffalo Amusement Corp., 600 F.2d 368, 379 (2d Cir.1979) (violation where witnesses crucial to defense could no longer be located, and other witnesses who previously had agreed to testify refused to do so); United States v. Vispi, 545 F.2d 328, 334-35 (2d Cir.1976) (violation where delay made locating old records and dealing with dimmed recollections "a formidable task"); United States v. Roberts, 515 F.2d 642, 646 (2d Cir.1975) (violation where government's delay disqualified defendant for youthful offender status). But Defendant, who was not incarcerated during this delay, does not argue that he suffered any further, specific trial-related prejudice or disadvantage. Thus, absent such a showing, the weight of this prong of the Barker test tips in the Government's favor. See Cain, 671 F.3d at 297.

\*\*\*\*

On balance, despite the unexplained negligence on the Government's part in pursuing Defendant Phalom for a substantial period of time (a fact that this Court finds particularly troubling) Defendant's flight, lack of interest in his own trial, opportunistic

assertion of his right, and his inability to show specific prejudice resulting from the delay, all tip the scales, however slightly, against a finding that Defendant's Sixth Amendment right was violated.

Accordingly, I will deny Defendant's motion to dismiss on Sixth Amendment speedy trial grounds.

## IV.   ORDERS

IT HEREBY IS ORDERED, that Defendant's motion to dismiss is DENIED.


Dated: July 22, 2013
      Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                              Chief Judge
                                          United States District Court